IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| USP TRANS, INC., | ) | Case No. 10 B 14553 |
| | ) | |
| Debtor. | ) | Judge Pamela S. Hollis |

**FINAL AGREED ORDER AUTHORIZING LIMITED
USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO
<u>BANK OF AMERICA, N.A.</u>**

This matter having come before the Court on a noticed final hearing (the "Final Hearing") upon the motion (the "Motion") of USP Trans, Inc. (the "Debtor") requesting this Court's authorization to use the cash collateral of Bank of America, N.A. ("Bank of America" or "Bank"), pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; the Debtor and the Bank of America having agreed to the Debtor's use of the Bank of America' Cash Collateral (defined *infra*) on an interim basis, pursuant to the terms and conditions specifically set forth herein and in that certain Stipulation For Limited Use Of Cash Collateral And Agreed Ninth Interim Order Authorizing Limited Use Of Cash Collateral And Granting Adequate Protection To Bank Of America N.A. dated December 14, 2010 (the Stipulation") attached as <u>Exhibit B</u> to the Ninth Interim Order Authorizing Limited Use Of Cash Collateral And Granting Adequate Protection To Bank Of America N.A entered December 16, 2010 (the "Ninth Interim Cash Collateral Order"), including, without limitation, the itemized line item budget or income items and expenses attached to each of the prior Interim Agreed Orders issued by the Court authorizing the use of Cash Collateral and granting Adequate Protection to the Bank in this proceeding for the prior budget periods described therein and for current budget periods in the budget attached as <u>Exhibit A</u> to the Ninth

Interim Cash Collateral Order ("Budget"), and) pursuant to the terms of the "Ninth Interim Cash Collateral Order".

The Debtor has confirmed to the Court that within seven (7) days after entry of the Ninth Interim Cash Collateral Order the Debtor served a notice of the Final Hearing, together with a copy of the Ninth Interim Cash Collateral Order, by regular mail upon (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtor, (iii) any known holders of prepetition liens against the Debtor's property, and (iv) any other party which has filed a request with this Court for notice in the Debtor's case and served such request upon the Debtor's counsel. The notice of the Final Hearing required that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Illinois no later than January 25, 2011 so that the same were received on or before 4:00 p.m. (Central time) of such date by (i) Debra J. Vorhies Levine, DVL LAW OFFICES, LLC., counsel to the Debtor, (ii) James G. Froberg, Lowis & Gellen LLP,, counsel to the Bank, and (iii) the Office of the United States Trustee. The Debtor has confirmed to the Court that no objection to the Motion has been filed or served by any creditor or party in interest in accordance with the Ninth Interim Cash Collateral Order other than a Limited Objection filed by the U.S. Trustee. The Debtor and the U.S. Trustee are seeking to resolve the substance of such limited objection.

The Court having reviewed the Motion; a preliminary hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); the Court having determined that the relief requested in the Motion, in particular the authority herein granted to the Debtor to use Cash Collateral on an interim basis and subject to the conditions set forth herein, is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; that the Debtor's

estate would suffer immediate and irreparable harm without such relief; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no objection to the Motion having been filed or served by any creditor or party in interest in accordance with the Ninth Interim Order; and after due deliberation thereon; and good and sufficient cause appearing therefore, the parties represent to the Court and the Debtor stipulates and agrees as follows that:

 A. The Debtor filed the above-captioned proceeding under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on April 1, 2010 (the "Petition Date"). Since the Petition Date, the Debtor has continued the management and operation of their businesses and assets as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

 B. As of the Petition Date, the Debtor was indebted to Bank of America, N.A. as successor in interest by merger with LaSalle Bank N.A (the "Bank") for certain outstanding loans (the "Loans") having an approximate principal balance of $672,247.19 and aggregate unpaid balance due of $696,757.57. The Loans are evidenced by the promissory notes and other documents and secured by the security instruments that are more particularly described as follows (collectively, the "Loan Documents"):

  a. Promissory Note dated 5/12/08 in the original principal amount of $150,000;

  b. Promissory Note dated 5/12/08 in the original principal amount of $180,000;

  c. Promissory Note dated 5/12/08 in the original principal amount of $500,000;

  d. Commercial Security Agreement dated 5/12/08 under which the Debtor granted Bank a security interest in substantially all of the assets of the Debtor including all inventory, chattel paper, accounts, equipment and general intangibles (the "Bank Collateral"). The Bank's security interest in the Bank Collateral was perfected by filing a Uniform Commercial Code

UCC-1 Financing Statement on 5/28/08 with the Illinois Secretary of State as Document No. 13296200. Copies of the Bank Loan Documents have been provided by the Bank to counsel for the Debtor. The Bank Loan Documents have been reviewed by counsel for the Debtor. Counsel for the Debtor has confirmed that the Bank Loan Documents created a valid security interest in the collateral of Debtor that was perfected by filing a UCC-1 Financing Statement on May 28, 2008.

C. The Debtor has an immediate and continuing need to use Cash Collateral. Authorization to use cash generated from accounts receivable collections and other cash collections realized by Debtor prior to the Petition Date and cash generated from accounts receivable collections and other cash collections realized by Debtor on and after the Petition Date (the "Cash Collateral") and such immediate use is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest. Without such authority to use the Cash Collateral, the Debtor's estate would suffer immediate and irreparable harm.

D. The Debtor and Bank have negotiated the terms of the Stipulation to secure and confirm the release of any lien that the Bank may have under its Loan Documents on the funds constituting the pre-petition retainer received from the Debtor and referred to in any Application For Interim Compensation For Counsel for the Debtor previously or hereafter made and to clarify the terms of continued use of Cash Collateral and to extend the further use of Cash Collateral through the Final Hearing Date and thereafter as may be modified and extended with the prior notice to and consent and agreement of the Bank or as may be subsequently extended or modified by further order of this Court.

E. In accordance with the Stipulation attached to the Ninth Interim Cash Collateral Order the Debtor and Bank have stipulated and agreed that:

4

1.  The Bank retains the Bank Claim as described in paragraph G.1 of the Stipulation with respect to each of the Note No. 59 Claim, Note No. 67 Claim and Note No. 75 Claim as Allowed Claims aggregating $696,757.57 and there is no necessity for the Bank to file its Proof of Claim in the Proceeding and to the extent that the Bank files any such Proof of Claims in this Proceeding to further evidence the Bank's Claim described herein the Bank shall not be barred from doing so by virtue of any Bar Date previously set in this Proceeding.

2.  The Debtor stipulates and agrees with the Bank that the Bank Claim shall be treated as a secured claim to the full extent of the value of the Bank Collateral and to the extent that the value of the Bank Collateral on the Petition Date exceeds the amount of the Bank Claim and the Bank has reserved its rights to seek interest and reimbursable costs and expenses to the extent permitted to the Bank under Section 506(b) of the Bankruptcy Code.

3.  Upon execution of the Stipulation and the entry of the Ninth Interim Cash Collateral Order, the Debtor agrees that it shall commence reserving $10,000.00 per month in the Debtor's accounts with the Bank commencing December 15, 2010 and continuing on the same day of each month thereafter for payment to the Bank pending entry of a subsequent Interim Order or entry of this Final Agreed Order Authorizing Limited Use Of Cash Collateral And Granting Adequate Protection To Bank Of America, N.A. the (the "Final Order" or this "Order"). And upon entry of this Final Order the Debtor shall immediately release any sums reserved under this paragraph to the Bank and commence making payments to the Bank of $10,000 per month commencing on February 15, 2011 and continuing on the same day of each month thereafter for application by the Bank to the principal amount owed by the Debtor to the Bank under the Bank Claim. In connection with the foregoing Budget set forth in the Ninth Interim Cash Collateral Order and any Budget set forth in any further Cash Collateral Order shall

be increased to permit such reserve of $10,000.00 per month with the Bank for subsequent payment to be made by the Debtor to the Bank as provided in the Ninth Interim Cash Collateral Order.

4. Upon execution of the Stipulation and the entry of the Ninth Interim Cash Collateral Order, and the receipt by the Bank of the initial $10,000 monthly payment as provided herein the Bank shall be deemed to have released any right or claim that the Bank may have on the monies held as the Retainer as described in the First Interim Fee Application.

5. Upon execution of the Stipulation and the entry of the Ninth Interim Cash Collateral Order, the Bank shall consent to the further use of Cash Collateral in the amounts and for the purposes as described in the Ninth Interim Cash Collateral Order and in the Budget attached to this Final Order.

Accordingly, it is hereby ORDERED that:

1. The Motion is hereby granted on an interim basis subject to the terms and conditions set forth in this Order and the Stipulation is approved.

2. The Debtor is authorized to use up to $65,000.00 per week of the Bank of America's Cash Collateral strictly in accordance with the Budget through no later than January 30, 2011 and thereafter through the term of the Budget (as such Budget may be subsequently extended by written agreement of the Debtor and the Bank to pay actual, ordinary, and necessary expenses of the Debtor's business, as well as any other expenses hereafter approved by this Court. The Debtor is authorized to remit $10,000.00 per month with the Bank as reserved for that purpose commencing December 15, 2010 and continuing on the same day of each month thereafter for subsequent payment to the Bank after the entry of this Final Order with each such monthly payment received by the Bank to be applied by the Bank to the principal amount owed

by the Debtor to the Bank under the Bank Claim. The Budget may be further modified with the prior written consent of the Bank.

3. As further adequate protection, the Bank is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected replacement liens in the Cash Collateral and Bank Collateral now or hereafter acquired by Debtor to the same extent and with the same priority on the same types of property subject to the security interests held by Bank of America as Bank of America held prior to the Petition Date. The liens granted in this paragraph ("Adequate Protection Liens") shall be subject only to prior-perfected valid and unavoidable liens in property of the Debtor's estate as of the Petition Date.

4. As further adequate protection afforded to the Bank, the Debtor shall pay an amount equal to daily interest payments, calculated in accordance with the interest rate in effect prior to the Petition Date pursuant to the terms of the Loan Documents, of $184.97 per day to Bank of America from April 1, 2010 with the initial payment due to Bank on first Friday after the entry of this Order and with subsequent weekly payments due each Friday thereafter. Such payments received by Bank shall be provisionally applied by the Bank as interest payments paid to Bank subject to such payments being reclassified and reallocated to principal payments received by Bank in the event that it is later determined that the Bank is not entitled to receive interest on its pre-petition indebtedness. As further adequate protection afforded to the Bank, the Debtor is authorized to commence payments to the Bank of $10,000.00 per month commencing as of December 15, 2010 and continuing on the same day of each month thereafter for application upon receipt by the Bank after the entry of this Final Order authorizing such

payments to the principal amount owed by the Debtor to the Bank as contemplated in Section 2 of this Order. The grant of adequate protection provided herein to the Bank is without prejudice to the Bank of America' respective rights to seek additional adequate protection of its interests in the Debtor's respective property held as Bank Collateral by Bank of America.

5. This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and unavoidability of the Adequate Protection Liens, whether or not the Bank of America elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the Bank of America may, in their sole discretion, but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bank of America's respective liens and security interests. Notwithstanding the foregoing, Debtor shall cooperate with the Bank to execute such documents and instruments and do such other things as the Bank reasonably request to evidence and perfect the Adequate Protection Liens. The grant and perfection of the Adequate Protection Liens as provided in this Final Order shall be binding on (i) the Debtor, (ii) any other debtor whose bankruptcy case is jointly administered or consolidated with these Chapter 11 proceedings, (iii) any successor in interest to Debtor, including, without limitation, any subsequently-appointed trustee in these cases, and in any superseding cases under Chapter 7 of the Bankruptcy Code, (iv) all parties in interest in these cases, and (v) creditors who have or may hereafter extend credit to the Debtor or its estate.

6. The entry of this Final Order is without prejudice to the Debtor's right to seek authority from the Court to use additional Cash Collateral if the Debtor determines that the Cash Collateral use authorized by this Final Order is insufficient.

7. So long as this Final Order is in effect, the Debtor shall not attempt to grant any entity, other than the Bank, a lien or security interest in any assets of the Debtors including the Cash Collateral and all other assets subject to the Adequate Protection Liens, pursuant to Bankruptcy Code §364 or otherwise, having priority over or parity with the Bank's secured interests in such assets without the prior express written consent of the Bank.

8. Unless otherwise agreed in writing by the Bank, all of the Cash Collateral collected by or on behalf of the Debtor shall be deposited and maintained at all times in the debtor-in-possession bank account at Charter One (the "DIP Account") in accordance with Bankruptcy Code §345 and shall not be commingled with any other funds derived from any source whatsoever that do not constitute Cash Collateral as defined in this Order. Debtor shall pay the actual, ordinary and necessary expenses of the Debtor's business as set forth in the Budget from the DIP Account.

9. Except as specifically authorized herein or by separate order of this Court, no transactions with or payments to or commitments to pay shall be made to any insider of the Debtor without the Bank's prior written consent.

10. Debtor shall continue to promptly provide the Bank with copies of all financial reports made to the Court or to the United States Trustee, including, without limitation, the monthly operating report for the prior month that the Debtor is required to file with the United States Trustee's office, along with all reports of revenues and expenses, and all other reports of financial data given by the Debtor to any other party, or reasonably requested by the Bank of

America. Without limiting the foregoing, Debtor shall continue to provide the Bank with weekly reports which include but are not limited to: (i) all sales generated by the Debtor; (ii) all accounts receivable generated by the Debtor and collected; (iii) all monies received by the Debtor; and (iv) an itemization of all of the Debtor's income and expenditures with the same level of line item detail as set forth in the Budget and with an explanation of any adverse variation to the Budget (the "Weekly Report"). The Weekly Report shall be delivered to the Bank starting on Monday, April 19, 2010, covering the preceding Monday to Sunday period through the date of the entry of this Final Order and thereafter the Weekly Report shall be delivered on a monthly basis. Subsequent Weekly Reports shall be delivered every seventh day after the end of each calendar month so long as Debtor is using any Cash Collateral of the Bank.

11. Nothing contained herein shall preclude Debtor or the Bank of America from making appropriate applications, motions or requests to the Court for such other and further relief as they deem necessary or desirable, including, without limitation, a motion for relief from the automatic stay pursuant to §362 of the Bankruptcy Code.

12. Any objection to the Motion or the Ninth Interim Cash Collateral Order having been filed or served by any creditor or party in interest in accordance with Paragraph 12 of the Ninth Interim Cash Collateral Order having been resolved or withdrawn or resolved. Any further objections by creditors or other parties in interest to any of the provisions of this Order who failed to file its objection in accordance Paragraph 12 of the Ninth Interim Cash Collateral Order shall be deemed waived.

13. Bank of America's consent and the Debtors' authority to use Cash Collateral under this Order shall be effective immediately and shall extend through the term of the Budget

(and thereafter as such Budget may be subsequently extended by written agreement of the Debtor and the Bank.

Dated: January __, 2011    JAN 27 2011

ENTER:

_____
Judge Pamela S. Hollis
United States Bankruptcy Judge

**AGREED TO:**

**USP TRANS., INC.**

By: */s/ Debra J. Vorhies Levine*
    One of its attorneys

Debra J. Vorhies Levine
Law Offices of Debra V. Levine
53 West Jackson Boulevard, Suite 1001
Chicago, Illinois 60604
Telephone: 312.259.5970

**BANK OF AMERICA, N.A.**

By: */s/ James G. Froberg*
    One of its attorneys

James G. Froberg
Lowis & Gellen LLP
200 West Adams Street, Suite 1900
Chicago, Illinois
Telephone: 312.364.2500
Facsimile: 312.364.1003